# United States Court of Appeals
# For the Second Circuit

August Term 2022

Argued: February 7, 2023
Decided: April 14, 2023

Nos. 21-3058 (L), 22-19 (Con), 22-159 (Con)

---

JAMES CONTANT, on behalf of themselves and all others similarly situated, MARTIN-HAN TRAN, on behalf of themselves and all others similarly situated, CARLOS GONZALEZ, on behalf of themselves and all others similarly situated, UGNIUS MATKUS, on behalf of themselves and all others similarly situated, JERRY JACOBSON, on behalf of themselves and all others similarly situated, PAUL VERMILLION, on behalf of themselves and all others similarly situated, SANDRA LAVENDER, VICTOR HERNANDEZ, FX PRIMUS LTD., CHARLES G. HITCHCOCK, III, TINA PORTER,

*Plaintiffs-Appellees*,

v.

AMA CAPITAL, LLC,

*Movant-Appellant*.*

---

Appeal from the United States District Court
for the Southern District of New York
No. 17-cv-9934, Lorna G. Schofield, *Judge*.

---

\* The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

Before:    PARKER, SULLIVAN, MERRIAM, *Circuit Judges*.

AMA Capital, LLC ("AMA") is a claimant in an antitrust class-action settlement. The settlement agreement at issue required that each claimant substantiate its claims with such documents as class counsel and the claims administrator, in their discretion, deemed acceptable. The settlement agreement also provided each claimant with the opportunity to (1) remedy deficiencies in its claims before the claims administrator issued its decision, and (2) if the claims administrator rejected its claims in whole or in part, contest the claims administrator's decision within twenty days of the mailing of the rejection notice. In this case, the claims administrator rejected most of AMA's claims because, among other things, AMA repeatedly failed to provide the requisite transactional records to support its claims. The district court (Schofield, *J.*) agreed and also denied AMA's motion for reconsideration based on documents it submitted subsequent to the claims administrator's rejection.

On appeal, AMA argues primarily that the district court erred by failing to consider documents it submitted during the post-rejection contest process and by denying its claims on the basis of improper evidentiary requirements. Because we conclude (1) that the claims administrator was not required to accept records during the contest process that were previously available to AMA, which is akin to a motion for reconsideration, and (2) that the district court did not err by denying AMA's claims, we **AFFIRM** the orders of the district court on appeal in Nos. 21-3058 and 22-159. Moreover, because AMA has standing as a class member to appeal any denial of its claims, we **DISMISS** as moot the appeal in No. 22-19, which challenges the district court's denial of AMA's motion to intervene.

AFFIRMED IN PART AND DISMISSED IN PART.

> SCOTT O. LUSKIN, Payne & Fears LLP, El Segundo, CA (Damian R. Cavaleri, Hoguet Newman, Regal & Kenney, LLP, New York, NY, *on the brief*), *for Movant-Appellant.*

MICHAEL DELL'ANGELO, Berger & Montague, P.C., Philadelphia, PA (Robert B. McCulley, McCulley McCluer LLC, Charleston, SC; Michael J. Kane, Berger & Montague, P.C., Philadelphia, PA, *on the brief*), *for Plaintiffs-Appellees.*

RICHARD J. SULLIVAN, *Circuit Judge*:

AMA Capital, LLC ("AMA") is a claimant in an antitrust class-action settlement. The settlement agreement at issue required that each claimant substantiate its claims with such documents as class counsel and the claims administrator, in their discretion, deemed acceptable. The settlement agreement also provided each claimant with the opportunity to (1) remedy deficiencies in its claims before the claims administrator issued its decision, and (2) if the claims administrator rejected its claims in whole or in part, contest the claims administrator's decision within twenty days of the mailing of the rejection notice. In this case, the claims administrator rejected most of AMA's claims because, among other things, AMA repeatedly failed to provide the requisite transactional records to support its claims. The district court (Schofield, *J.*) agreed and also denied AMA's motion for reconsideration based on documents it submitted subsequent to the claims administrator's rejection.

3

On appeal, AMA argues primarily that the district court erred by failing to consider documents it submitted during the post-rejection contest process and by denying its claims on the basis of improper evidentiary requirements. Because we conclude (1) that the claims administrator was not required to accept records during the contest process that were previously available to AMA, which is akin to a motion for reconsideration, and (2) that the district court did not err by denying AMA's claims on the grounds that they lacked the requisite transactional records, we **AFFIRM** the orders of the district court on appeal in Nos. 21-3058 and 22-159. Moreover, because AMA has standing as a class member to appeal any denial of its claims, we **DISMISS** as moot the appeal in No. 22-19, which challenges the district court's denial of AMA's motion to intervene.[1]

## I. Background

In 2013, individuals and entities who *directly* purchased foreign-exchange products from various international banks brought a class action alleging that the

---

[1] We have jurisdiction to review the district court's orders under the collateral-order doctrine because the orders at issue (1) "conclusively determine[d]" the parties' dispute over AMA's denied claims; (2) "resolve[d] an important issue completely separate from the merits of the [underlying class] action"; and (3) were "effectively unreviewable on appeal from a final judgment," as a final judgment had been entered in the underlying class action from which no appeal had been filed. *Am. Plan Admins. v. S. Broward Hosp. Dist.*, 39 F.4th 59, 61 (2d Cir. 2022) (stating the requirements for a district-court order to be considered a final decision for purposes of 28 U.S.C. § 1291 under the collateral-order doctrine).

4

banks conspired with each other to fix prices in the foreign-exchange market; the parties ultimately settled that suit in August 2018. *See In re Foreign Exch. Benchmark Rates Antitrust Litig. (FOREX)*, No. 13-cv-7789 (LGS) (Aug. 6, 2018, S.D.N.Y.). Separately, in 2017, Plaintiffs – a group of investors in foreign-exchange products – brought this class action ("*Contant*") against the banks, alleging that through various retail foreign-exchange dealers ("RFEDs"), Plaintiffs *indirectly* purchased foreign-exchange products from the banks at prices that were inflated as a result of the price-fixing conspiracy. By July 2020, the parties in this action agreed to resolve all indirect claims as part of a $23.6 million settlement. On November 19, 2020, the district court granted final approval of the settlement and dismissed the action with prejudice.

As relevant here, the settlement agreement approved by the district court (the "Settlement Agreement") defined the class to include "[a]ll persons and entities who . . . indirectly purchased an [i]nstrument from a [d]efendant or co-conspirator . . . by entering into an [i]nstrument with a member of the [*FOREX* settlement class], where the [*FOREX* settlement class] member entered into the

[i]nstrument directly with a [d]efendant or co-conspirator."[2] J. App'x at 2098. To determine a claimant's class membership and its share of the settlement fund, the Settlement Agreement required that each claimant "submit a proof of claim" and provide "such documents or proof as Class Counsel and the Claims Administrator, in their discretion, may deem acceptable."[3] *Id.* at 2113. After a claimant submitted its proof of claim and supporting documents, the Settlement Agreement authorized "the Claims Administrator" to "determine whether the proof of claim . . . is in accordance with [the] Settlement Agreement . . . and the extent, if any, to which each claim shall be allowed, subject to review by the [district court]." *Id.* at 2114. Each claimant also had the option of (1) "[a]uthorizing the Claims Administrator to compute [its] claim based on records obtained by" Class Counsel, *id.* at 2700, or (2) "completing . . . [an] 'Option

---

[2] The Settlement Agreement also defined "Class Counsel" to include "Berger Montague PC" and "McCluer McCluer PLLC," and "Claims Administrator" as "Heffler Claims Group." J. App'x at 2090.

[3] Although the Settlement Agreement provided that any claimant who failed to submit a proof of claim before a court-imposed deadline "shall be forever barred from receiving any payment" under the settlement, J. App'x at 2113, the Settlement Agreement also conferred on "Class Counsel . . . the discretion, but not the obligation, to accept late-submitted claims for processing by the Claims Administrator," *id.* at 2114. The district court ultimately imposed a deadline of March 19, 2021, for the submission of a proof of claim.

6

Two Claim Form Spreadsheet' listing [its] transactions" and "submitting detailed transactional records to support [its] claim[s]," *id.* at 2702.

The Settlement Agreement further stated that "[p]roofs of claim that do not meet the submission requirements may be rejected," and required that "[p]rior to rejection of a proof of claim," the Claims Administrator "communicate with the claimant in order to remedy the curable deficiencies in the proofs of claim submitted." *Id.* at 2114. In the event that the Claims Administrator decided to reject a claim in whole or in part, the Settlement Agreement required the Claims Administrator to set forth the reasons for its rejection in writing. Any claimant "desir[ing] to contest such rejection" was then obligated to "serve upon the Claims Administrator a notice and statement of reasons indicating the claimant's grounds for contesting the rejection along with any supporting documentation" within twenty days of "the date of mailing of the [rejection] notice." *Id.* at 2115. Subsequently, "[i]f a dispute concerning a claim [could not] be otherwise resolved," Class Counsel was required to "present the request for review to the [district court]." *Id.*

AMA submitted its initial proof of claim on May 12, 2021, nearly two months after the March 19 deadline, but Class Counsel exercised its discretion to

7

accept AMA's late-submitted claims for processing. In support of its claims, AMA listed over 17 million transactions in its Option Two Claim Form Spreadsheet but failed to provide any transactional documents to corroborate those transactions. Between May 24 and July 8, 2021, Class Counsel repeatedly informed AMA that its submissions were deficient as they lacked the requisite account and trade statements to substantiate the trade data provided in its spreadsheet. Moreover, because AMA had submitted claims in the *FOREX* settlement, which included some or all of its transactions submitted in *Contant*, Class Counsel also directed AMA to identify duplicate transactions it claimed in both settlements. In response, AMA only provided "exemplars" of the trade confirmation messages (known as "FIX messages") and account statements it received from various trading venues, which, according to Class Counsel, fell short of full compliance with its requests. *Id.* at 2749.

On August 13, based on records submitted by AMA and analyses conducted by subject-matter experts, the Claims Administrator issued an assessment that approved in part and rejected in part AMA's claims. Among other things, the Claims Administrator found that AMA had not provided documentation necessary to validate the overwhelming majority of its claims as indirect

transactions pursuant to the class definition and failed to identify which transactions it had submitted for compensation in both this case and *FOREX*. Accordingly, the Claims Administrator rejected AMA's claims with respect to any transactions that did not qualify as valid indirect purchases or had not been sufficiently substantiated.

On August 26 and September 2, AMA submitted additional account statements and FIX messages in response to the Claims Administrator's assessment. AMA nonetheless protested that it should not have to spend innumerable hours locating documents from transactions that were more than a decade old and disagreed with the Claims Administrator's conclusion that trades could not be accepted in both *Contant* and *FOREX*. On September 15, after AMA and Class Counsel attempted but failed to resolve their dispute, Class Counsel requested the district court's review pursuant to the Settlement Agreement.

The district court agreed with the Claims Administrator's assessment, finding that "all of the claims denied by" the Claims Administrator were "denied because they all lack[ed] detailed transactional records as required by the [Settlement Agreement]." Sp. App'x at 5. AMA then moved for reconsideration, arguing that the district court had overlooked the documents that

9

AMA had submitted during the twenty-day contest period. The district court denied that motion, explaining that the contest provision in the Settlement Agreement did not "permit yet another bite at the apple" for AMA "to remedy deficiencies" in its claims. *Id.* at 17. The district court reasoned that "the process of contesting a rejected claim . . . should be viewed as the functional equivalent of a motion for reconsideration and not a chance to reopen the claims process in its entirety by permitting the submission of new evidence previously available to the claimant." *Id.* at 17–18. Alternatively, the district court found that "[e]ven if AMA were entitled to submit additional new documentation following the rejection of its claim[s] by the Claims Administrator, AMA still [did] not meet its burden . . . because AMA failed to identify the duplicate transactions it submitted in *FOREX*." *Id.* at 18.

AMA separately moved to intervene in the class action under Rule 24(a)(2) of the Federal Rules of Civil Procedure in order to appeal the district court's decisions. Citing *Rothstein v. American International Group*, 837 F.3d 195, 204 (2d Cir. 2016), the district court denied the motion and found that AMA did "not need to intervene . . . because, as a class member," AMA had standing to "appeal any potential denial of its claim," Sp. App'x at 8. AMA timely appealed the

district court's rulings on both its claims under the settlement agreement and the denial of its motion to intervene.

## II. DISCUSSION

Because "[d]istrict courts enjoy broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members equitably," we ordinarily review the district court's "allocations of class settlements" for "abuse of discretion." *In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 179, 181 (2d Cir. 1987) (internal quotation marks omitted); *see also Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 435 (2d Cir. 2007) (reviewing "the allocation of funds derived from class settlements" for "abuse of discretion"); *Waldman ex rel. Elliott Waldman Pension Tr. v. Riedinger*, 423 F.3d 145, 147 n.2 (2d Cir. 2005) ("[D]isputes over the valuation of class members' shares" are typically left "to the district court and Claims Administrator to resolve."). But when an "appeal requires us to consider the district court's interpretation of [the] terms of the [s]ettlement [a]greement," we review the "district court's interpretation . . . *de novo*." *Waldman*, 423 F.3d at 148–49. Moreover, we review a district court's denial of a motion for reconsideration "for abuse of discretion" and will affirm its decision unless the movant "can point to

11

controlling decisions or data that the [district] court overlooked." *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 53–54 (2d Cir. 2019).

On appeal, AMA argues that the district court erred by (1) failing to consider documents it submitted during the contest period, (2) rejecting its claims based on improper evidentiary requirements, and (3) denying its motion to intervene in the class action for the sole purpose of appeal.[4] Because the district court's denial of AMA's motion to intervene implicates a "jurisdictional standing question," we address that argument first "before deciding [the] case on the merits." *Rothstein*, 837 F.3d at 202.

**A.  Motion to Intervene**

AMA argues that, to the extent it has no independent standing to pursue these appeals, the district court erred in denying its motion to intervene. In *Rothstein*, we held that a claimant to a class-action settlement fund "should be considered a party for the purpose of appealing" if it (1) "ha[s] bona fide reasons to believe" that it is a "member[] of the [s]ettlement [c]lass," (2) "reasonably relie[s]

---

[4] AMA also attempts to recast its disagreement with the district court's evidentiary requirement as a due-process challenge. But AMA never argued in the district court that the claims-administration process violated due process. Because we "will not consider an issue raised for the first time on appeal," *Green v. Dep't of Educ.*, 16 F.4th 1070, 1078 (2d Cir. 2021) – including any unpreserved due process arguments in a class action, *see Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) – we decline to consider AMA's constitutional challenge in the first instance.

12

on claims submitted to [the claims administrator] and [is] given no indication that they may have been ineligible," and (3) "most important, . . . ha[s] a concrete and particularized interest clearly affected by the judgment of the district court." 837 F.3d at 204.

AMA meets all three criteria. AMA has bona fide reasons to believe that it is a member of the settlement class because both the district court and Class Counsel recognized it as such. *See* Sp. App'x at 8 (the district court characterizing AMA "as a class member"); J. App'x at 3080 (Class Counsel characterizing AMA "as an apparent [class] member"). AMA also reasonably relied on the claims it submitted to the Claims Administrator in asserting its eligibility as a class member. Moreover, AMA has a concrete and particularized interest in the district court's decisions, which determined the extent of its approved claims, and correspondingly, its pro rata share of the settlement proceeds. We therefore agree with the district court that AMA has standing "as a class member" to "appeal without intervening." Sp. App'x at 8. As such, we "dismiss as moot [AMA's] appeal of the district court's denial of the motion to intervene." *Rothstein*, 837 F.3d at 205.

## B. Documents Submitted During the Contest Period

Likening the contest process under the Settlement Agreement to a motion for reconsideration, the district court concluded that AMA had been provided with an opportunity to "remedy the curable deficiencies prior to rejection" and therefore declined to consider the "new detailed transactional records" that AMA submitted after the Claims Administrator's rejection. Sp. App'x at 17. This ruling was not in error.

"A settlement agreement is a contract that is interpreted according to general principles of contract law." *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 443 (2d Cir. 2005). When "a written agreement . . . is complete, clear[,] and unambiguous on its face," we must enforce the agreement "according to the plain meaning of its terms." *In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 122 (2d Cir. 2014). Here, the express terms of the Settlement Agreement permit claimants the opportunity to "*remedy* the curable deficiencies" in their claims "[*p*]*rior* to rejection," J. App'x at 2114, and "to *contest* such rejection . . . *after*" the Claims Administrator issued its assessment, *id.* at 2115 (emphasis added).

It is significant that the Settlement Agreement uses two different words – "*remedy*" and "*contest*" – to describe the dispute-resolution process *before* and *after* the Claims Administrator issues its assessment. *Id.* at 2114–15 (emphasis added).

14

In common usage, "remedy" means to "set right []an undesirable situation," *Remedy*, *New Oxford American Dictionary* (3d ed. 2010), whereas "contest" means to "oppose []an action, decision, or theory[] as mistaken or wrong," *Contest*, *New Oxford American Dictionary* (3d ed. 2010).[5] When a claimant seeks to *remedy* its claims before the Claims Administrator's rejection, the claimant may do all things necessary to "set right" the deficiencies in its claims. *Remedy*, *New Oxford American Dictionary* (3d ed. 2010). But when a claimant seeks to *contest* the Claims Administrator's rejection, that process serves the limited purpose of allowing the claimant to object to "mistake[s]" and "wrong[s]" committed by the Claims Administrator. *Contest*, *New Oxford American Dictionary* (3d ed. 2010). As the district court recognized, the contest process under the terms of the Settlement Agreement is therefore akin to a motion for reconsideration, which may be used as a vehicle "to correct a clear error or prevent manifest injustice," *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 108 (2d Cir. 2013), but not

---

[5] *See also Remedy, OED Online*, www.oed.com/view/Entry/162130 ("To put right, reform (a state of things); to rectify, make good."); *Remedy*, *Merriam-Webster.com*, https://www.merriam webster.com/dictionary/remedy ("[To] correct[] or counteract[.]"); *Contest*, *OED Online*, www.oed.com/view/Entry/40191 ("[T]o argue against, dispute, controvert, call in question."); *Contest*, *Merriam-Webster.com*, https://www.merriam webster.com/dictionary/contest ("[T]o make the subject of dispute, contention, or litigation.").

15

to "relitigate an issue already decided," *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

In this case, before the Claims Administrator issued its assessment, AMA was given at least four opportunities to cure what Class Counsel had identified as documentary deficiencies in its proof of claim. AMA nonetheless repeatedly declined to comply.[6] The Claims Administrator therefore rejected AMA's claims because AMA had not provided documentation necessary to validate the overwhelming majority of its claims. In response, AMA did not "oppose" the Claims Administrator's finding that it had not provided the requested documentation "as mistaken or wrong." *Contest*, *New Oxford American Dictionary* (3d ed. 2010). Instead, AMA sought to submit records that had been available to AMA all along, but which AMA had deemed too burdensome to provide. Given the express terms of the Settlement Agreement and the record before us, we cannot

---

[6] AMA argues that the Settlement Agreement required the Claims Administrator to communicate with the claimants regarding any deficiencies before making a determination, and because "the [C]laims [A]dministrator was [merely] copied on some emails with [C]lass [C]ounsel, but did not communicate or participate [directly] in any discussions" with AMA regarding its claims, the district court's order "requires reversal." AMA Br. at 33. We are not persuaded. Nothing in the express terms of the Settlement Agreement requires *direct* communications between Claims Administrator and the claimants. And even if it did, there is no indication in the record that the outcome for AMA's rejected claims would have been different if the Claims Administrator, rather than Class Counsel, conducted the communications.

conclude that the district court erred by declining to consider the documents that AMA submitted after the Claims Administrator issued its assessment.

AMA nonetheless contends that the *remedy* process before the Claims Administrator's rejection and the *contest* procedure thereafter both require that claimants be given an opportunity "to cure *all* defects." AMA Br. at 30 (emphasis added). We disagree. Under New York law, which governs the Settlement Agreement, "[t]he use of different terms in the same agreement . . . implies that they are to be afforded different meanings." *Jin Ming Chen v. Ins. Co. of the State of Penn.*, 36 N.Y.3d 133, 140 (2020) (alteration in original) (citing *Platek v. Town of Hamburg*, 24 N.Y.3d 688 (2015)). To adopt AMA's interpretation would instead require us to "run[] afoul of traditional contract principles," *Kelly v. Honeywell Int'l, Inc.*, 933 F.3d 173, 183 (2d Cir. 2019), and "strip" the distinct words in the Settlement Agreement of their "independent meaning[s]," *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 163 n.20 (2012). We therefore decline to conflate the *contest* procedure with the *remedy* process under the Settlement Agreement.

C. **Evidentiary Standards**

Nor do we agree with AMA's argument that the district court denied its claims based on improper evidentiary standards. We have long held that "a

17

class-action settlement agreement binds all class members who did not" timely opt out. *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 129 (2d Cir. 2011) (collecting cases). The Settlement Agreement here provided that each claimant must submit "such documents or proof as Class Counsel and the Claims Administrator, in their discretion, may deem acceptable." J. App'x at 2113. Claimants who chose not to rely on Class Counsel to compute their share of the settlement fund were thus required to "submit[] detailed transactional records to support" their own computation. *Id.* at 2702.

After AMA submitted its claims, Class Counsel repeatedly asked AMA to provide account or trade statements to substantiate the trade data listed in its spreadsheet containing over 17 million transactions. Despite Class Counsel's repeated requests, AMA refused to comply, arguing that providing documentation for all trades submitted would be overly burdensome. Based on the limited records that AMA did provide, the Claims Administrator found, among other things, that AMA had not provided documentation necessary to validate the overwhelming majority of its claims and rejected AMA's claims with respect to any transactions that had not been sufficiently substantiated.

The district court agreed with the Claims Administrator's determination, finding that "all of the claims denied by" the Claims Administrator were "denied because they all lack[ed] detailed transactional records as required by the [Settlement Agreement]." Sp. App'x at 5. Although the district court's own analysis was terse, it relied on the extensive briefings submitted by the parties and the assessment prepared by the Claims Administrator, which comprehensively identified the defects in AMA's claims. Therefore, in agreeing with the Claims Administrator, the district court properly based its allocation of the settlement fund on "the comparative strengths and weaknesses of the asserted . . . claims," *In re Holocaust Victim Assets Litig.*, 413 F.3d 183, 186 (2d Cir. 2005), "without resolving trial-type issues of liability" for each submitted transaction, *Agent Orange*, 818 F.2d at 183 (alteration and internal quotation marks omitted). For these reasons, we cannot conclude the district court erred by partially rejecting AMA's claims.

### III. CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's orders on appeal in Nos. 21-3058 and 22-159 and **DISMISS** the appeal in No. 22-19 as moot.